ORIGINAL

KENJI M. PRICE #10523
United States Attorney
District of Hawaii

MICAH W.J. SMITH
Deputy Chief, Criminal Division

MARK A. INCIONG   CA BAR #163443
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:   (808) 541-2958
Email:  mark.inciong@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 13 2020

at _10_ o'clock and _25_ min._a_M _ayn_
MICHELLE RYNNE, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 20-00051 DKW |
| | ) |
| Plaintiff, | ) MEMORANDUM OF PLEA |
| | ) AGREEMENT |
| vs. | ) |
| | ) DATE: |
| ROXANNE L. CABRAL, | ) TIME: |
| | ) JUDGE:  Derrick K. Watson |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF PLEA AGREEMENT**

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, ROXANNE L. CABRAL, and her

attorney, CARY M. VIRTUE, Esq., have agreed upon the following:

## THE CHARGES

1.      The defendant acknowledges that she has been charged in the Indictment with violating Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

2.      The defendant has read the charges against her contained in the Indictment, and those charges have been fully explained to her by her attorney.

3.      The defendant fully understands the nature and elements of the crimes with which she has been charged.

## THE AGREEMENT

4.      The defendant will enter a voluntary plea of guilty to Count 1 of the Indictment which charges her with the distribution of 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers.

5.      The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.      The defendant enters this plea because she is in fact guilty of distributing 50 grams or more of methamphetamine as charged in Count 1 of the Indictment and she agrees that her plea is voluntary and not the result of force or threats.   Defendant also understands that the offense to which she is pleading guilty to in Count 1 requires the Government to prove beyond a reasonable doubt

2

to a jury that she is responsible for distributing 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers.

Defendant agrees that she is knowingly responsible for distributing 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers and hereby waives any and all right she has to have a jury determine drug type and weight beyond a reasonable doubt.

## **PENALTIES**

7.      The defendant understands that the penalties for the offense to which she is pleading guilty include:

　　　　a.      A term of imprisonment for not more than life, a fine of up to $10,000,000, or both, and a term of supervised release of not less than five years and up to life;

　　　　b.      A mandatory minimum term of imprisonment of ten years;

　　　　c.      In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty.   The defendant agrees to pay $100 for each count to which she is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessment, before the commencement of any portion of sentencing.   The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will

3

allow, though not require, the prosecution to withdraw from this Agreement at its option.

   d. **Loss of Federal Benefits.** At the discretion of the Court, the defendant may also be denied any or all federal benefits, as that term is defined in Title 21, United States Code, Section 862, (a) for up to five years if this is the defendant's first conviction of a federal or state offense amounting to the distribution of controlled substances, or (b) for up to ten years if this is the defendant's second conviction of a federal or state offense consisting of the distribution of controlled substances.   If this is the defendant's third or more conviction of a federal or state offense amounting to the distribution of controlled substances, the defendant is permanently ineligible for all federal benefits, as that term is defined in Title 21, United States Code, Section 862(d).

## FACTUAL STIPULATIONS

  8. The defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which the defendant is pleading guilty:

   a. On July 7, 2015, a Honolulu Police Department Confidential Informant (HPDCI) made and received recorded calls and exchanged text messages with a Cooperating Defendant (CD) to arrange for the

4

purchase of four (4) ounces of crystal methamphetamine from the CD for $4,000. The two agreed to conduct the drug transaction later that day on Salt Lake Boulevard in Honolulu, Hawaii 96818.

b. Also on July 7, 2015 and prior to the transaction, surveillance agents observed the CD's known vehicle, a 2006 white Acura, parked in a driveway on Aliipoe Drive in Aiea, Hawaii. Approximately one hour after the HPDCI and CD agreed upon the drug transaction time and place, surveillance agents in position on Aliipoe Drive observed a brown 1993 Toyota sedan registered to Roxanne L. Cabral ("CABRAL"), the Defendant, arrive at the location of the CD's vehicle. Using a state of Hawaii driver's license photo, officers at the scene positively identified CABRAL as the driver of the Toyota. Surveillance agents further observed the CD exit a residence on Aliipoe Drive and greet CABRAL who handed the CD a bright green paper gift bag through the open driver's side window of CABRAL's vehicle. CABRAL then drove away and the CD re-entered the residence with the green bag.

c.          Approximately twenty minutes later, surveillance agents observed the CD again come out of the Aliipoe Drive residence and

5

enter the white Acura sedan carrying the bright green paper gift bag. Agents followed as the CD drove to the Salt Lake Shopping Center and parked near K-Mart.   Shortly after, the HPDCI arrived and parked next to the CD's vehicle at which time the CD was removed by law enforcement and placed under arrest.

d.      While removing the CD from the white Acura, officers observed and seized a bright green paper gift bag, believed to be the same bag delivered earlier by CABRAL, in plain view on the driver's side floorboard.   The bag contained a clear zip lock bag filled with what appeared to be methamphetamine.   A personal bag was also observed in close proximity to the green gift bag and a search of it yielded various styles of ziplock baggies all containing what appeared to be methamphetamine and/or marijuana.

e.      A search of the HPDCI and his/her vehicle was negative for contraband and officers recovered the $4200 in buy money and a covert recording device which had been given to the HPDCI.

f.      The CD agreed to waive his/her Miranda rights and speak with agents immediately after being arrested.   The CD also provided written consent to search the white Acura and waived his/her right for

a prompt judicial determination of probable cause.   In a post-<u>Miranda</u>

statement, the CD admitted to agreeing to the four-ounce meth deal

that day with the HPDCI.     The CD also identified (by driver's

license photo) "Roxy" CABRAL as the woman who had earlier

dropped off the methamphetamine in the bright green gift bag found

in his/her vehicle.   The CD stated stated he/she had obtained

methamphetamine from CABRAL on numerous, previous occasions

and that CABRAL was expecting to be paid $4800 for the drugs.

The CD provided CABRAL's phone number and agreed to cooperate

with the Drug Enforcement Administration (DEA) as a cooperating

defendant.   The CD was then released.

g.   The following day, July 8, 2015, the CD, acting under the direction of

DEA agents and in the presence of a DEA undercover officer, made

several calls to CABRAL to set a meeting time and place to pay

CABRAL for the four ounces of methamphetamine CABRAL

supplied the previous day.   Later on July 8, 2015, surveillance

officers observed CABRAL arrive at the meet location on Aliipoe

Drive in Aiea, Hawaii.   DEA surveillance agents observed the CD,

outfitted with a covert recording device and in possession of $4500 in

7

buy money, meet with CABRAL and deliver the DEA buy money to
her.   CABRAL then quickly left the area.

h. On July 8, 2020, CABRAL was arrested at her residence in Aiea,
Hawaii.   After being advised of her Miranda rights, CABRAL
voluntarily chose to waive those rights and speak with DEA agents.
During the interview, CABRAL positively identified a photograph of
the CD, referenced above, and admitted to selling the CD four to six
ounces of methamphetamine three to four years ago.   CABRAL
stated she remembered the transaction because it was the only drug
deal she had conducted with the CD of that quantity.   CABRAL
indicated her other drug dealing with the CD had been for smaller
amounts such as 1/8 or 1/16 of an ounce a few times per month.

i. CABRAL also agreed to a search of her bedroom where, inside a safe
box, agents found some empty ziplock bags and drug paraphernalia.
CABRAL also gave agents permission to search her phone which
contained text messages from June, 2020 in which CABRAL admitted
she was seeking to obtain user amounts of methamphetamine. Also
found saved in CABRAL's contacts was a phone number known by
law enforcement to have been used by the CD.

8

j.  Analysis by the DEA Southwest Laboratory determined that the substance found in the green paper gift bag seized from the CD's vehicle on July 7, 2015 was 113.3 grams of 98.3% pure Methamphetamine HCI, or 111.3 grams of pure methamphetamine.

k.  At all relevant times, CABRAL knew that the substance she distributed on July 7, 2015 was, in fact, methamphetamine.

9.  Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

10.  Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

a.  The parties stipulate to the facts as set forth in paragraph 8 of this agreement.

9

b.      Defendant shall be responsible for not less than 113.3 grams of

methamphetamine – the total amount CABRAL distributed on July 7, 2015.   The

results of laboratory analysis conducted on the substance(s) seized by the DEA are

as follows:

| DEA Ex.#: | Controlled Substance: | Net Wgt.: | Purity: | Actual Wgt.: |
|---|---|---|---|---|
| 3 | Methamphetamine Hydrochloride | 113.3 g | 98.3% | 111.3 g |

The foregoing chemical analysis was conducted by the DEA Southwest

Laboratory.   Methamphetamine Hydrochloride is a methamphetamine salt and a

Schedule II controlled substance.   The substance in DEA Exhibit 3 is "ice" as that

term is defined in Note C to the Drug Quantity Table in Guidelines Section

2D1.1(c).

c.      As of the date of this agreement, it is expected that the

defendant will enter a plea of guilty prior to the commencement of trial, will

truthfully admit her involvement in the offense and related conduct, and will not

engage in conduct that is inconsistent with such acceptance of responsibility.   If

all of these events occur, and the defendant's acceptance of responsibility

continues through the date of sentencing, a downward adjustment of 2 levels for

acceptance of responsibility will be appropriate.   *See* U.S.S.G. § 3E1.1(a) and

Application Note 3.

d.    The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant.   Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if the defendant is otherwise eligible.   The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11.    The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.   The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

11

12.     The parties represent that as of the date of this agreement there are no material facts in dispute.

## APPEAL/COLLATERAL REVIEW

13.     The defendant is aware that she has the right to appeal her conviction and the sentence imposed.   The defendant knowingly and voluntarily waives the right to appeal, except as indicated in subparagraph "b" below, her conviction and any sentence within the Guidelines range as determined by the Court at the time of sentencing, and any lawful restitution order imposed, or the manner in which the sentence or restitution order was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this Agreement.   The defendant understands that this waiver includes the right to assert any and all legally waivable claims.

a.     The defendant also waives the right to challenge her conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

12

b.      If the Court imposes a sentence greater than specified in the

guideline range determined by the Court to be applicable to the defendant, the

defendant retains the right to appeal the portion of her sentence greater than

specified in that guideline range and the manner in which that portion was

determined and to challenge that portion of her sentence in a collateral attack.

c.      The prosecution retains its right to appeal the sentence and the

manner in which it was determined on any of the grounds stated in Title 18, United

States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

14.    In connection with the collection of restitution or other financial

obligations that may be imposed upon her, the defendant agrees as follows:

a.      The defendant agrees to fully disclose all assets in which she

has any interest or over which she exercises control, directly or indirectly,

including any assets held by a spouse, nominee, or third party.   The defendant

understands that the United States Probation Office (USPO) will conduct a

presentence investigation that will require the defendant to complete a

comprehensive financial statement.   To avoid the requirement of the defendant

completing financial statements for both the USPO and the government, the

defendant agrees to truthfully complete a financial statement provided to the

13

defendant by the United States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office.   The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.   The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

   b. The defendant expressly authorizes the United States Attorney's Office to obtain her credit report.   The defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing.   The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

14

c.      Prior to sentencing, the defendant agrees to notify the Financial

Litigation Unit of the U.S. Attorney's Office before making any transfer of an

interest in property with a value exceeding $1,000 owned directly or indirectly,

individually or jointly, by the defendant, including any interest held or owned

under any name, including trusts, partnerships, and corporations.

## FORFEITURE

15.     As part of her acceptance of responsibility and pursuant to 21 U.S.C.

§ 853, the defendant agrees as follows:

a.      The defendant agrees to forfeit to the United States all of her

right, title, and interest in the following property (the "Specific Property"):

$4,500 in United States currency in the form of Drug Enforcement Administration

(DEA) buy funds paid to ROXANNE L CABRAL, the defendant, on July 8, 2015

for approximately 113 grams of methamphetamine in the area of Aliipoe Drive,

Aiea, Hawaii.

b.      The defendant acknowledges that the Specific Property is

subject to forfeiture pursuant to 21 U.S.C. § 853 as (1) property constituting, or

derived from, proceeds the person obtained, directly or indirectly, as the result of a

violation of the provisions of 21 U.S.C. §§ 801 et seq. or 21 U.S.C. §§ 951 et seq.;

15

and (2) property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

       c.     The defendant knowingly and voluntarily waives and agrees to waive any and all constitutional, statutory, and other challenges to the forfeiture on any and all grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment.   The defendant knowingly and voluntarily waives any right to a jury trial on the forfeiture of property.

       d.     The defendant agrees to consent promptly upon request to the entry of any orders deemed necessary by the government or the Court to complete the forfeiture and disposition of the property.   The defendant waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of forfeiture in the charging instrument, announcement of forfeiture at sentencing, and incorporation of the forfeiture in the judgment.   The defendant acknowledges that he understands that the forfeiture of the property, if the government elects to conduct the forfeiture criminally, will be part of the sentence imposed upon the defendant in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure, during the change of plea hearing.   Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, the defendant consents to

the preliminary order of forfeiture for the Specific Property becoming final as to
the defendant when entered.

        e.     The defendant agrees to waive all interest in the Specific
Property in any administrative or judicial forfeiture proceeding, whether criminal
or civil, state or federal, and to withdraw any claim that the defendant may have
filed in such a proceeding.   The defendant further waives any other notice
requirement that may apply to the administrative and/or civil forfeiture of the
Specific Property.

        f.     The defendant understands that the forfeiture of the forfeitable
property does not constitute and will not be treated as satisfaction, in whole or in
part, of any fine, restitution, reimbursement of cost of imprisonment, or any other
monetary penalty this Court may impose upon the defendant in addition to the
forfeiture.

## IMPOSITION OF SENTENCE

      16.    The defendant understands that the District Court in imposing
sentence will consider the provisions of the Sentencing Guidelines.   The defendant
agrees that there is no promise or guarantee of the applicability or non-applicability
of any Guideline or any portion thereof, notwithstanding any representations or
predictions from any source.

17.     The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary.   The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charge adequately reflects the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## **WAIVER OF TRIAL RIGHTS**

18.     The defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.     If the defendant persisted in a plea of not guilty to the charges against her, then she would have the right to a public and speedy trial.   The trial could be either a jury trial or a trial by a judge sitting without a jury.   The defendant has a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

b.     If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual

18

bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the defendant is presumed innocent, and that it could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt.

   c. If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

   d. At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.   The defendant would be able to confront those prosecution witnesses and her attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on her own behalf.   If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

   e. At a trial, the defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify.

19

   f. At a trial, the defendant would have a right to have the jury determine beyond a reasonable doubt the quantity and weight of the controlled substance charged in the Indictment necessary to establish the statutory mandatory minimum penalty or an increased statutory maximum penalty.

   19. The defendant understands that by pleading guilty, she is waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to her, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

   20. If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that she makes by signing this Agreement or that she makes while pleading guilty as set forth in this Agreement may be used against her in a subsequent trial if the defendant later proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn.   The *only* exception to this paragraph is where the

20

defendant fully complies with this Agreement but the Court nonetheless rejects it. Under those circumstances, the United States may not use those statements of the defendant for any purpose.

21.     The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against her, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

## **COOPERATION**

22.     The Defendant agrees that she will fully cooperate with the United States.

a.     The Defendant agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests her to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving codefendants and others indicted later in the investigation, and related civil proceedings.

b.     The Defendant agrees to be available to speak with law enforcement officials and to representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he

21

understands he may have her counsel present at those conversations, if he so desires.

      c.     The Defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes in this Indictment or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

      d.     Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

23.     In the event that the Defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after Defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case in chief in the trial of the Defendant in this matter.  Defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross examination or rebuttal.

24.    Pursuant to Guideline Section 5Kl.1 and Rule 35(b), Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the Defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.   Pursuant to Title 18, United States Code, Section 3553(e), the prosecution may also move the Court to impose a sentence below the level established by statute as a minimum sentence on the ground that Defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.   Defendant understands that:

      a.    The decision as to whether to make such a request or motion is entirely up to the prosecution.

      b.    This Agreement does not require the prosecution to make such a request or motion.

      c.    This Agreement confers neither any right upon the Defendant to have the prosecution make such a request or motion, nor any remedy to Defendant in the event the prosecution fails to make such a request or motion.

      d.    Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

25.    The defendant and her attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

26.    To become effective, this Agreement must be signed by all signatories listed below.

27.    Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.

DATED:   Honolulu, Hawaii, Oct 29. 2020

AGREED:

KENJI M. PRICE
United States Attorney
District of Hawaii

MICAH W.J. SMITH
Deputy Chief, Criminal Division

CARY M. VIRTUE
Attorney for Defendant

MARK A. INCIONG
Assistant U.S. Attorney

ROXANNE L. CABRAL
Defendant

24