IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROXANNE L. CABRAL,<br><br>Defendant. | Case No. 20-cr-00051-DKW<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Approximately 13 months into her 57-month sentence, Defendant Roxanne Cabral asks the Court to grant her compassionate release to home confinement with location monitoring, citing various medical concerns and the need to care for her 82-year-old father. None of these factors, individually or collectively, presents extraordinary or compelling reasons warranting the relief Cabral seeks. Furthermore, Cabral has failed to demonstrate that she exhausted her administrative remedies, and the Section 3553 sentencing factors do not weigh in her favor. Therefore, her motion for compassionate release is DENIED.

## RELEVANT BACKGROUND

On November 13, 2020, Cabral pled guilty to distributing 50 grams or more of methamphetamine. Dkt. No. 16. On March 4, 2021, the Court sentenced her to 57 months' imprisonment to be followed by three years of supervised release. Dkt. No. 23. An Order of Forfeiture (Money Judgment) in the amount of $4,500 was

also levied against her.  Dkt. No. 22.  Cabral is serving her sentence at FDC-Honolulu with an anticipated release date of April 30, 2025.  Dkt. No. 32 at 5.[1]

On May 16, 2022, Cabral filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("compassionate release motion").  Dkt. No. 27. Cabral claims that her health conditions, which include osteoarthritis of the knee, an "abnormal" breast exam, obesity, and high blood pressure, as well as her need to care for her 82-year-old father, who has a tumor behind his ear, present extraordinary and compelling reasons warranting release.  *Id.*

On June 7, 2022, the Government filed a response in opposition, contending that Cabral's circumstances are neither extraordinary nor compelling, especially given that some of her medical claims are not supported by her medical records.  In one instance, for example, she refused physician-recommended medical care for her supposed serious health issues because she did not want to quarantine in advance.  Dkt. No. 32.  Cabral did not reply to the Government's opposition, and this Order follows.

## LEGAL STANDARD

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in

---

[1] *Find an Inmate*, Federal Bureau of Prisons ("BOP"), https://www.bop.gov/inmate/loc (last visited June 22, 2022) (BOP Register Number 12243-122).

limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)).  Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

Congress carved out one such circumstance in 18 U.S.C. § 3582(c)(1)(A)(i). A court may "modify a term of imprisonment" upon an inmate's motion if:

1. the inmate exhausted "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on her behalf or 30 days has lapsed since the relevant warden received a request to do so;

2. the inmate has established that "extraordinary and compelling reasons warrant such a reduction"; and

3. the court considers the sentencing factors set forth in 18 U.S.C. §3553(a).

18 U.S.C. § 3582(c)(1)(A)(i).  The inmate bears the burden of establishing the requirements for a sentence reduction by a preponderance.  *See, e.g.*, *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also Walton v. Arizona*, 497 U.S. 639, 650 (1990) ("[A] defendant's [due process] rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency."), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

## DISCUSSION

### I.   Exhaustion of Administrative Rights

Section 3582(c)(1)(A)(i) requires an inmate to either exhaust "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on her behalf or wait 30 days from the time the relevant warden receives a request to do so.  18 U.S.C. § 3582(c)(1)(A)(i).  Exhaustion is a statutory requirement, not a judge-made one.

> [J]udge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. . . .  But a statutory exhaustion provision stands on a different footing.  There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to.

*Ross v. Blake*, 578 U.S. 632, 639 (2016) (citation omitted).  In the compassionate release context, "exhaustion is mandatory—nothing in the text of [the] statute suggests allowance for equitable or judicial exceptions."  *United States v. Drummondo-Farias*, 460 F. Supp. 3d 1008, 1011 (D. Haw. 2020), *aff'd*, 855 F. App'x 417 (9th Cir. 2021).

Here, the Government has conceded, for the limited purpose of its response, that Cabral has satisfied the administrative exhaustion requirement.  Dkt. No. 32 at 2.[2]  However, Cabral has provided no evidence of any attempt on her part to appeal the BOP's failure to bring a motion on her behalf or to request that the FDC-

---

[2]*See also* Dkt. No. 32 at 2 n.2 (reserving the right to submit further briefing on the administrative exhaustion issue should the Court grant Cabral's request for compassionate release).

Honolulu warden do so.  *See* Dkt. No. 27.  Thus, regardless of the Government's

decision not to brief the issue, the Court finds that Cabral has not met the

exhaustion requirement, and, consequently, denies her motion on that basis.

## II.   <u>Extraordinary and Compelling Reasons</u>

Even if Cabral had exhausted her administrative remedies, her motion would

be denied on its merits.  Section 3582(c)(1)(A)(i) permits a sentence reduction only

upon a showing of "extraordinary and compelling reasons."  Congress did not

define "extraordinary and compelling reasons" warranting compassionate release,

but the Sentencing Commission has.  *See* U.S.S.G. § 1B1.13.  The Sentencing

Commission's definition is binding only as to compassionate release motions

brought by the Director of the Bureau of Prisons, not where, as here, such motions

are brought directly by a defendant.  Nonetheless, that definition "may inform a

district court's discretion for [Section] 3582(c)(1)(A) motions filed by a

defendant."  *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).

Application notes 1.A and 1.C of the commentary to U.S.S.G § 1B1.13 provide, in

relevant part, that "extraordinary and compelling reasons exist under" the

following circumstances:

> **(A) Medical Condition of the Defendant.--**
> (i) The defendant is suffering from a terminal illness (i.e., a serious
> and advanced illness with an end of life trajectory).  A specific
> prognosis of life expectancy (i.e., a probability of death within a
> specific time period) is not required.  Examples include metastatic

solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
(ii) The defendant is--
(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(C) Family Circumstances.--**
(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

Here, Cabral describes two sets of circumstances she hopes warrant compassionate release: her medical conditions and her family circumstances.[3]

## A.    Cabral's Medical Conditions

Cabral claims that "unforeseen ailments have taken over [her] life physically."  Dkt. No. 27 at 1.  While her medical records consistently confirm that Cabral suffers from the claimed ailments, the records do not demonstrate anything approaching life-threatening, acute, or serious or that her conditions have not been appropriately managed in custody.

---

[3]Cabral does not explicitly cite to the Sentencing Commission's guidance in her motion.

6

i.     Osteoarthritis of the knee

Cabral claims that she requires a knee replacement and that she currently "walk[s] with a cane as it is bone to bone." *Id.* Her medical records document "osteoarthritis of knee," a diagnostic arthroscopy of the right knee in 2019, one round of injections for the associated pain in 2021, and a current prescription for painkillers. Dkt. No. 35 at 5, 15, 18, 23, 29. A radiologist examined Cabral's knees on August 17, 2021, and the scan confirmed the presence of osteoarthritis in both knees. *Id.* at 159. However, there is no mention of any need for a knee replacement anywhere in the medical records. *See generally* Dkt. No. 35. Thus, it appears that Cabral receives regular medical care for her knees and has no documented need for knee replacement. Nor is there any information in the record even suggesting that the BOP could not provide or arrange for such a replacement, even if one were necessary.

ii.     Abnormal Breast Exam

Cabral claims she had an abnormal breast examination while in custody and "need[s] a second opinion," especially since her "mother has a history of breast cancer." Dkt. No. 27 at 1.[4] Cabral's medical records confirm that, on September 27, 2021, her screening mammogram showed a "nodule density" that required a

---

[4]Cabral's medical records confirm that her mother has a history of breast cancer, having been diagnosed when she was younger than Cabral's current age. Dkt. No. 35 at 156.

follow-up diagnostic mammogram and possibly an ultrasound.  Dkt. No. 35 at 26.

It appears that the BOP offered access to follow-on screening services but, on

February 28, 2022, Cabral declined to attend.  *See id.* at 14 ("[Cabral] does not

want to go to [her] outside [appointment] for recommended Mammogram . . . .

She reports she does not want to have to go on quarantine due to the offsite

[appointment] and therefore declines at this time.").  Thus, again, Cabral seems to

have received adequate preventive and follow-up screening for breast cancer, and

there is no evidence indicating that she must be released early in order to access

such services.

     iii.   <u>Obesity</u>

     Cabral describes herself as "morbidly obese."  Dkt. No. 27 at 1.[5]  Cabral's

medical records confirm that she suffers from this medical condition.  On January

27, 2022, Cabral's physician documented that Cabral is "obese" with a BMI of 41.

Dkt. No. 35 at 18.  The physician reported that Cabral was "[w]ell appearing, well

nourished."[6]  *Id.*  The physician also noted that Cabral had demonstrated

"[i]ntentional weight loss over the last year with lifestyle modification efforts[,]

exercising (walking)[,] and making smart diet choices."  *Id.* at 17.  Thus, it appears

---

[5]Cabral does not tie this condition to the risk of contracting COVID (against which she is vaccinated).  *See* Dkt. No. 27 at 1.

[6]The CDC categorizes adults with Body Mass Index (BMI) scores of 30 and above as obese.  A person whose BMI exceeds 40.0 is classified as Class 3, or "severe[ly]" obese.  *Overweight and Obesity*, CDC (June 3, 2022) https://www.cdc.gov/obesity/adult/defining.html (last visited June 22, 2022).

that Cabral has actually made progress toward weight loss while incarcerated. And, once again, there is nothing in the record demonstrating her obese condition is acute or serious or that further progress can only be achieved through early release.

  iv. <u>Hypertension</u>

  Finally, Cabral claims she has high blood pressure.  Dkt. No. 27 at 1. Cabral's medical records confirm this condition but do not show that Cabral's care in custody is lacking.[7]  On January 27, 2022, Cabral was prescribed a new hypertension medication, and her physician ordered her blood pressure to be taken four times over the coming weeks.  Dkt. No. 35 at 18, 19.

  v. <u>Conclusion</u>

  Cabral has not shown that she suffers from a terminal illness or deteriorating mental or physical condition "that substantially diminishes [her] ability . . . to provide self-care within the environment of a correctional facility and from which [she] is not expected to recover."  *See* U.S.S.G. § 1B1.13.  Moreover, given the amount and level of medical care Cabral is being provided and her ability to manage and even improve her medical issues while incarcerated, Cabral has not

---

[7]High blood pressure affects a significant percentage of the American population.  *Hypertension Prevalence Among Adults Aged 18 and Over: United States, 2017–2018*, CDC (April 2020) https://www.cdc.gov/nchs/products/databriefs/db364.htm (last visited June 22, 2022) (stating that 45.4% of American adults have hypertension).

shown that she has not received proper medical care in prison or that compassionate release would improve her access to such care. Thus, whether considered separately or in combination, Cabral's medical conditions do not present extraordinary or compelling reasons to grant the relief she seeks.

**B.     Cabral's Family Circumstances**

Cabral claims, "[M]y father needs me to assist him as he has a tumor behind his ear and my mother suffers from bipolar which causes her mental ailment to impede in providing assistance to my father." Dkt. No. 27 at 2. Cabral provides no documentation of her parents' medical conditions, leaving the Court without information that may clarify how compelling these circumstances may be.

Moreover, even assuming her father requires care from a third person and that her mother is not able to assume that role because of her own health issues, Cabral has not shown that she is the only available substitute. According to Cabral's Presentence Investigation Report, she has two living siblings. Dkt. No. 21 at 11. One of them, Rhonda Kealoha, is 49 years old, employed, and lives on Oʻahu in Mililani, a short drive from her parents' Pearl City home. *Id.* In addition, Cabral has four adult children, two of whom live on the island of Oʻahu. *Id.* at 13. Raylene Fraser is 38 years old, employed as a hairstylist, and resides in Pearl City, and Raynele Koverman is 37 years old, owns a small business, and resides in Kapolei. *Id.* Cabral provides no explanation as to why these other relatives, all

with income and residing nearby, are unable to assist her father. Therefore, Cabral's family circumstances do not present an extraordinary or compelling reason to grant her release to home confinement.

## III.   Section 3553(a) Factors

Finally, even if Cabral had exhausted her administrative remedies, and even if she had demonstrated extraordinary and compelling reasons justifying compassionate release, the sentencing factors weigh against her. Without explicitly identifying any Section 3553(a) factors, Cabral makes claims that broadly track two of the factors: (1) her exemplary record in prison and (2) her need for medical care. Dkt. No. 27 at 1; *see* 18 U.S.C. § 3553(a) (Factor 1: "the nature and circumstances of the offense and the history and characteristics of the defendant" and Factor 2(d): "the need for the sentence imposed . . . to provide the defendant with . . . medical care"). Neither factor supports her cause.

i.   Factor 1

Cabral states that she has "an impeccable record while being an inmate" and has worked "part-time in the kitchen and as a unit orderly." Dkt. No. 27 at 1. The Court agrees that there is no evidence that Cabral's time in prison has been anything but exemplary. However, the Court's analysis of this factor must also consider the nature and circumstances of Cabral's offense and Cabral's other history, all of which were carefully and recently considered by this Court on

11

March 4, 2021 when it sentenced Cabral to 57 months' incarceration after she pled guilty to methamphetamine distribution.  Dkt. No. 21 at 4.  Cabral has currently served only about 13 months—approximately 23%—of her sentence.  Dkt. No. 23. The fact that she has served her time without incident thus far does not persuade the Court to disregard the remainder of the sentencing factors or the sentence it imposed just over a year ago.

      ii.    <u>Factor 2(d)</u>

As discussed above, Cabral suffers from various medical ailments including osteoarthritis of the knee, an abnormal breast exam, obesity, and high blood pressure.  Dkt. Nos. 27 at 1; 35 at 4, 12, 17.  The Court appreciates that these conditions leave Cabral in pain and in need of medical attention, a fact true of many others in and outside of custody.  But she makes no justifiable claim that the care she has received in prison is below standard or that her conditions are not manageable within the prison setting.  Cabral receives prescription medication for her arthritis pain and high blood pressure, she was provided the opportunity to have a follow-up diagnostic mammogram, which she declined, and she has succeeded in losing some weight while incarcerated because of diet and exercise. In sum, the Section 3553(a) factors weigh against granting Cabral's motion for compassionate release.

## **CONCLUSION**

For the reasons set forth above, Cabral has failed to exhaust her administrative remedies, she has failed to present extraordinary and compelling reasons warranting a sentence reduction, and the sentencing factors weigh against early release. Accordingly, her motion seeking compassionate release to home confinement with location monitoring, Dkt. No. 27, is DENIED.

IT IS SO ORDERED.

DATED: June 24, 2022 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

_United States of America v. Roxanne L. Cabral_; Criminal No. 20-00051 DKW;
**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**